**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

RAFAEL VARELA,

                              Plaintiff,

        v.                                         No. 10-CV-1390
                                                  (GLS/DRH)

THE COUNTY OF RENSSELAER; THE CITY OF
TROY; THE TROY POLICE DEPARTMENT;
RONALD L. EPSTEIN; BAILEY KELLEHER &
JOHNSON, P.C.; and JOHN W. BAILEY,

                              Defendants.[1]

_____

**APPEARANCES:**                                 **OF COUNSEL:**

RAFAEL VARELA
Plaintiff Pro Se
450 Madison Street
Troy, New York 12180

BAILEY, KELLEHER & JOHNSON, P.C.         JOHN W. BAILEY, ESQ.
Counsel for defendants County of            WILLIAM C. FIRTH, ESQ.
   Rensselaer, Bailey Kelleher &
   Johnson, P.C., and John Bailey
Pine West Plaza 5, Suite 507
Washington Avenue Extension
Albany, New York 12205

CITY OF TROY CORPORATION COUNSEL    CHARLES A. SARRIS, ESQ.
Counsel for the City of Troy Defendants    JAIME B. THOMAS, ESQ.
City Hall
One Monument Square
Troy, New York 12180

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

      Plaintiff pro se Rafael Varela ("Varela") filed this action in New York state court alleging,

---

[1] Fifteen other defendants were previously dismissed.  Dkt. Nos. 42, 54.

among other state law claims, that his constitutional rights have been violated under the Civil Rights Act, 42 U.S.C. § 1983.  The case was removed to federal court on November 16, 2010.  Dkt. No. 1.  Presently pending are Varela's (1) motion to amend his complaint and (2) motion for a preliminary injunction ("PI") and temporary restraining order ("TRO") to reinstate his driver's license.  Dkt. Nos. 49, 50.  Defendants oppose both motions.  Dkt. No. 59.  For the reasons which follow, it is (1) ordered that Varela's motion to amend be granted in part and denied in part, and (2) recommended that Varela's motion for a PI and TRO be denied.

## I. Background

Varela's original complaint, while difficult to decipher, alleges a myriad of state and federal violations related to various arrests, prosecutions, and detentions which he experienced in 2006, 2007, and 2008.  Dkt. No. 42 at 3.  Presently, Varela seeks to amend his complaint to add additional defendants and causes of action related to the suspension of his driver's license by New York State Department of Motor Vehicles (DMV) for a failure to pay court-order child support.  Dkt. No. 49, 49-1.

On July 31, 2011, Varela received notification from the New York State Child Support Processing Center (hereinafter "the Support Collection Unit" or "SCU") that he was in arrears for his child support payments in the amount of $3,441.45 and that, based upon that amount, the SCU was "authorized by law to notify [DMV] to suspend [his] driving privileges." Dkt. No. 50 at 32.  Varela was also instructed that notification would occur unless, within forty-five days, (1) he made payments for, or arrangements with the SCU to pay, the full

amount of the arrears or (2) filed a written challenge.  Id.; see also N.Y. Soc. Serv. Law §
111-b(12)(b)(1) (statutory notice provisions).  Varela was notified that his license would be
suspended on October 18, 2011.  Dkt. No. 50 at 24.  Varela included with his moving
papers a written affidavit, entitled "Challenge to Driver's License Suspension," but the
document was not dated.  Id. at 27-28.  In that document, Varela disputed the amount of
arrears and indicated that additional support payments had already been sent or were in the
mail.  Id.

　　To challenge such notification, there must be an administrative challenge which will
result in an administrative determination.  N.Y. Soc. Serv. Law § 111-b(12)(d)(1).
Construing the facts in the light most favorable to Varela, the affidavit he filed constitutes
the administrative challenge.[2]  Varela contends that this affidavit was served "both in writing
and by mail upon the Rensselaer Child Support Collection Unit, and also hand delivered to
[his] SCU worker . . . ."  Dkt. No. 50 at 24.  It is undisputed that there is nothing in the record
indicating there was any type of administrative determination from the SCU, as required by
the Social Services Law.[3]

　　On October 17, 2011, Varela filed an order to show cause in Rensselaer County
Supreme Court regarding the SCU's failure to comply with statutory notice requirements
and inappropriate contact with DMV despite Varela's written affidavit of protest.  Dkt. No. 50

---

　　　[2] However, the affidavit is undated so it is unclear whether this was filed within the
prescribed forty-five days.  Furthermore, just being an affidavit, it is unclear where it was
sent and who received it.

　　　[3] Pursuant to the statute, Varela could also file his objections to the notification with
the Family Court, who would then issue a determination during which the revocation
proceedings would be stayed.  Id. §(d)(1) –(d)(2).  There is nothing in the record which
suggests that Varela engaged in this motion practice.

at 23.  The order was denied by Judge Henry Zwack "for lack of [j]urisdiction" however, Varela contends that no subsequent written order followed so he cannot appeal the Article 78 determination.  Varela Aff. ¶ 6.  Specifically, Varela states that Judge Zwack dismissed the case because it had previously been heard by Judge Walsh who also dismissed it for lack of jurisdiction.  Id. ¶ 7.  Moreover, Varela claims that Judge Zwack "denied [his] . . . civil rights to proper access to the courts," by providing opposing counsel with extra time and assistance in presenting their case then refusing to allow Varela to argue his case.  Id. Varela also contended that at the conclusion of the case, Judge Zwack gave him incorrect, unsolicited legal advice.  Id.  Ultimately, Varela's license was suspended on October 18, 2011. Id. ¶ 2.

On November 1 and 8, 2011, Varela submitted complaints, via electronic mail, against the department of Social Services and various employees for notifying DMV about what Varela contends was an incorrect finding of child support arrears.  Dkt. No. 50 at 25-26.  As a result of the litigation and revocation of his license, Varella alleges he has experienced physical problems and anxiety attacks due to the resulting stress.  Dkt. No. 49-1 at 4. During a conference in this Court on February 21, 2012, Varela reported that he had a restricted driver's license, allowing him to drive to work, and defendants reported that they did not have any documents associated with the Article 78[4] cases or proceedings.  Varela has provided the Order to Show Cause and his accompanying affidavits with his submissions.  A search of Westlaw by the undersigned failed to find any written decisions by either Judge Zwack or Judge Walsh regarding this matter.

---

[4]N.Y. C.P.L.R. art. 78 establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

4

**III. Motion to Amend**

Rule 15(a) provides that a court should grant leave to amend "freely . . . when justice so requires."  When exercising its discretion, a court must examine whether there has been undue delay, bad faith, or dilatory motive on the part of the moving party.  Evans v. Syracuse City School District, 704 F.2d 44, 46 (2d Cir. 1983) (citing Foman, 371 U.S. at 182).  The court must also examine whether there will be prejudice to the opposing party.  See, e.g., Ansam Associates Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir.1985) (permitting proposed amendment would be especially prejudicial once discovery has been completed and a summary judgment motion filed).  Finally, where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of discretion to deny leave to amend.  Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted).

When denying a motion to amend based upon futility, the denial should be calculated pursuant to the standards utilized to determine a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).") (citations omitted).  When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant."  Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[and t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007)

(holding that "entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

Accordingly, to defeat a motion to dismiss, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) I, 129 S. Ct. at 1949) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (citations omitted).  Determining whether plausibility exists is "a content specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950-51.

In this case, granting Varela's request to amend his complaint is not futile.  "It is well established that many state-created privileges, such as a license to drive, are not to be taken away without that procedural due process required by the Fourteenth Amendment." See e.g., Gudema v. Nassau County, 163 F.3d 717, 724 (2d Cir. 1998) (internal quotation marks and citations omitted).

> [I]n evaluating what process satisfies the Due Process Clause, "the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." [Hellenic Am. Neighborhood Action Comm. v. City of New York,]101 F.3d 877, 880 (2d Cir.1996) [(hereinafter "HANAC")] (citing Hudson v. Palmer, 468 U.S. 517, 532, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984),

and <u>Parratt</u>, 451 U.S. at 541, 101 S.Ct. 1908). When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy. <u>Id.</u>; <u>see</u> <u>Hudson</u>, 468 U.S. at 533, 104 S.Ct. 3194 (explaining that when deprivations are "random and unauthorized ... predeprivation procedures are simply impracticable since the state cannot know when such deprivations will occur" (internal quotation marks omitted)). In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing. <u>HANAC</u>, 101 F.3d at 880; <u>Parratt</u>, 451 U.S. at 541, 101 S.Ct. 1908. Under those circumstances, "the availability of post-deprivation procedures will not, ipso facto, satisfy due process." <u>HANAC</u>, 101 F.3d at 880.

<u>Rivera-Powell v. New York City Bd. of Elections</u>, 470 F.3d 458, 465 (2d Cir. 2006).

If the deprivation of Varela's license was arbitrary and capricious, then the post-deprivation proceedings provided by the Article 78 proceeding would preclude the § 1983 claim. <u>See</u> <u>HANAC</u>, 101 F.3d at 881 (explaining that recent Supreme Court holdings "emphasize that there *is no* constitutional violation (and no available § 1983 action) when there is an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty."). This is because the evaluation of "the existence and adequacy of the remedies provided by state statutes is a question of law, not of fact." <u>Gudema</u>, 163 F.3d at 724. The Second Circuit has determined that an Article 78 proceeding provides such an opportunity because it allows the submission of proof and a trial whereupon administrative as well as constitutional issues may be determined. <u>Id.</u>; <u>Rubin v. Swarts</u>, No. 10-CV-4119 (NGG)(LB), 2011 WL 1004838, at *4 (E.D.N.Y. Mar. 18, 2011)(denying leave to amend complaint to add claim for improper suspension of drivers license because the Article 78 proceedings were available to the plaintiff and his failure to pursue such remedies was fatal to his federal claim) (Dkt. No. 58-1 at 9-12). Accordingly,

Varela would have no viable cause of action and allowing the amendment would be futile.

However, if the deprivation "was part of an established state procedure, such that the availability of a post-deprivation remedy would not *automatically* satisfy due process, [the court] would merely go on to determine what process was due." Rivera-Powell, 470 F.3d at 466 (citing Locurto v. Safir, 264 F.3d 154, 172 (2d Cir. 2001)). "The distinction between random and unauthorized conduct and established state procedures, however is not clear-cut." Id. "[I]f the state delegated to those actors the power and authority to effect the very deprivation complained of and the concomitant duty to initiate the procedural safeguards set up by state law, even if the act in question was not sanctioned by state law," it is still considered pursuant to state procedures. Id. (internal quotation marks and citations omitted).

In this case, Varela's deprivation was pursuant to a state procedure outlined in the Social Services law whereupon the SCU would notify DMV of Varela's non-compliance with his support obligations and the DMV would then be obligated to suspend Varela's license. See N.Y. Soc. Serv. Law § 111-b(12)(b)(1) (explaining that when an individual is in arrears totaling an amount equal or greater than four months of support payments, the SCU "shall notify the support obligor in writing that his . . . continued failure to pay the support arrears shall result in notification to the department of motor vehicles to suspend the support obligor's driving privileges . . . . "; N.Y. Veh. & Traf. Law § 510(3) ("Upon receipt of notification from the [SCU] . . . of a person's failure to satisfy support arrears . . . the commissioner or his or her agent shall suspend the license of such person to operate a motor vehicle."). In response to this notification, Varela was able to file objections to the SCU's calculations of his arrears, which he did. Viewing the allegations in the light most

favorable to varela, he never received an administrative determination from the SCU despite mailing and personally delivering his affidavit to them.

Moreover, after receiving a suspension, while DMV, its Commissioner, and his or her designees have immunity from suit, Varela's statutory remedy against the SCU was to file an Article 78 proceeding.  N.Y. Veh. & Traf. Law § 510(4) ("[S]uch person shall have no right to commence a court action or proceeding or to any other legal recourse against the commissioner to recover such driving privileges . . . [but that does not] prohibit such person from proceeding against the [SCU] pursuant to article seventy-eight . . . .").  Viewing the facts in the light most favorable to Varela, he commenced this Article 78 proceeding alleging violations of his due process rights.  The proceeding was dismissed after defendants were able to present their evidence, with assistance from the judge, but without affording Varela the right to be heard.

Thus, in light of the allegations, the court must determine what process Varela was due. This evaluation occurs pursuant to the balancing test articulated by the Supreme Court in Mathews v. Eldridge, whereupon the following factors are considered:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest
> through the procedures used, and the probable value, if any, of
> additional or substitute procedural safeguards; and finally, the
> Government's interest, including the function involved and the fiscal
> and administrative burdens that the additional or substitute
> procedural requirement would entail.

424 U.S. 319, 335 (1976).

Given that an individual has a protected property interest in his license, it is clear that there is an important private interest which is infringed when the license is suspended due to official action.  Accordingly, the first factor weighs in Varela's favor.

9

Notice and an opportunity to be heard represent the corner stones of due process

protection.  See United Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 1377 (2010)

quoting Mullane v. Cent. Hanover Bk. & Trust Co., 339 U.S. 305, 314 (1950)). if Varela

received these rights subsequent to his notification, the second factor would not weigh in

his favor.  See e.g., Spinelli v. City of New York, 579 F.3d 160, 169 (2d Cir. 2009) ("The

touchstone of due process . . . is the requirement that a person in jeopardy of serious loss

be given notice of the case against him and opportunity to meet it.") (internal quotation

marks and citations omitted).  It is undisputed that Varela received no form of pre-

deprivation hearing.  While he received, and provided the court with, a form of pre-

deprivation notice and reasoning for why his license may be revoked, he did not receive an

administrative determination in response to his objections to said notification from the SCU.

Varela sought an opportunity to be heard during his Article 78 hearing, which, even as a

form of post-deprivation review has been deemed sufficient to satisfy due process

requirements in a deprivation due to a state procedure because it provides a full judicial

review and consideration of the constitutional claims.  Locurto, 264 F3d at 174-75 (holding

that despite a cursory pre-hearing review, the subsequent judicial review provided by the

Article 78 proceeding was sufficient to comply with due process requirements).

However, viewing the facts in the light most favorable to Varela, he was deprived of a

meaningful opportunity for review of his case because he was not provided the opportunity

to present his defense.  Given Varela's arguments that the SCU's calculations of his arrears

payments were inconsistent with his own records, and the fact that he had continued to

make payments, the lack of a meaningful opportunity to be heard resulted in a high risk of

an erroneous deprivation to him. Thus the alleged "safeguards against an unacceptable risk

of arbitrary and erroneous deprivations," which have been relied upon in the cited case law were unavailable to Varela.  Spinelli, 579 F.3d at 174 (internal quotation marks and citations omitted).  Accordingly, the second factor also favors Varela.

The third factor is difficult to assess because there have been no arguments proffered by defendants with regards to the Mathews factors.  It is clear that the SCU and County have a vested interest in ensuring that child support payments are made if the individual is able.  Additionally, allowing for an enforcement mechanism for compliance with the child support orders is essential in ensuring the County and SCU can successfully conduct their business.  However, there is no benefit to denying Varela to engage in either a pre- or post-deprivation hearing which may result in the suspension of a license which would preclude him from attending work and having the income required to meet his support obligations.  As such, it appears that the third factor also favors Varela.

Accordingly, viewing the complaint in the light most favorable to Varela, he has alleged facts which plausibly allege a deprivation of his due process rights.  Therefore, allowing amendment of his complaint is not futile and will be granted.

However, in the case of proposed amendments where new defendants are to be added, the Court must also look to Fed. R. Civ. P. 21.  Rule 21 states that a party may be added to an action "at any stage of the action and on such terms as are just."  Rule 21 is "intended to permit the [joinder] of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable."  United States v. Commercial Bank of N.A., 31 F.R.D. 133, 135 (S.D.N.Y. 1962) (internal quotation marks omitted).  Addition of parties under Rule 21 is also guided by the same liberal standard as a motion to amend under Rule 15.  Fair Housing Dev. Fund

11

Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972).  Given the arguments discussed supra, Varela claims against the SCU make them both a necessary and desirable party.

   To the extent Varela wishes to add the New York State Office of Temporary and Disability Assistance ("OTDA") or the Commissioner of Social Services, Varela has failed sufficiently to allege that either the entity or individual were personally involved in the alleged constitutional violation.  "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Accordingly, just by virtue of holding the position of Commissioner is insufficient to allege personal involvement.  Moreover, Varela's only claims against the OTDA is that he emailed them complaints about the SCU's incorrect calculations and subsequent actions.  Ignoring letters of complaint is insufficient to establish personal involvement.  See Bodie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citations omitted); Johnson v. Wright, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability.") (citations omitted).

   Therefore, adding either of these two additional parties would be both unnecessary and futile as Varela has failed to allege their personal involvement and cannot sustain an action pursuant to § 1983.  Therefore, his request to add these parties is denied.

12

**III. Motion for PI & TRO**

The standard for issuing injunctive relief in the Second Circuit is well established and requires "[t]he moving party [to] show (1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief." Covino v. Patrissi, 967 F.2d 73, 76-77 (2d Cir. 1992) (citations omitted).  Irreparable harm requires demonstration of an "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." Forest City Daly Housing, Inc. v. Town of North Hempstead, 175 F.3d 144, 153 (2d Cir. 1999) (citations omitted).  However, when the alleged irreparable harm is the violation of a constitutional right, no further showing is generally required.  Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984) (citations omitted).

During Varela's conference with the court he indicated that he had received a restricted license, allowing him to drive to work.  Pursuant to N.Y. Veh. & Traf. Law § 530, an individual whose license has been suspended pursuant to § 510, the section applicable to Varela's suspension, may seek a restricted license for the purposes of continuing to work, pursue an education, or receive medical care.  Id. § 530(1).  Accordingly, given Varela's statements in court, he has received his license back in the limited capacity to travel for work, education, or medical needs.  As such, Varela has failed to establish any irreparable harm.

Accordingly, it is recommended that Varela's motion seeking a PI and TRO be denied.

13

### IV.  Conclusion

For the reasons stated above, it is hereby

　　1. **ORDERED** that Varela's motion for leave to file an amended complaint (Dkt. No. 49) be:

　　　　A.  **GRANTED** as to Varela's claims against the SCU;

　　　　B.  **DENIED** as to Varela's claims against the OTDA and Commissioner of Social Services; and

　　　　C. Varela shall file and serve his amended complaint adding the SCU as a defendant on or before **March 23, 2012**; and

　　2. **RECOMMENDED** that Varela's motion for a preliminary injunction and a temporary restraining order (Dkt. No. 50) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the recommendation that the motion for a preliminary injunction and temporary restraining order be denied.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated:  March 8, 2012
　　　　Albany, New York

David R. Homer

United States Magistrate Judge

14