**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RAFAEL VARELA,**

                          **Plaintiff,**                    **1:10-cv-1390**
                                                            **(GLS/RFT)**

              **v.**

**THE COUNTY OF RENSSELAER**
**et al.,**

                          **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Rafael Varela
Pro Se
450 Madison Street
Troy, NY 12180

**FOR THE DEFENDANTS:**
_The County of Rensselaer, Bailey Kelleher_
_& Johnson, P.C., and John W. Bailey_
Bailey, Kelleher Law Firm            JOHN W. BAILEY, ESQ.
Pine West Plaza 5                    WILLIAM C. FIRTH, ESQ.
Suite 507
Washington Avenue Extension
Albany, NY 12205

_The City of Troy_
City of Troy, Corporation Counsel    IAN H. SILVERMAN, ESQ.
Department of Law
1776 6th Avenue
Troy, NY 12180

Office of Joshua A. Sabo             JOSHUA A. SABO, ESQ.

287 North Greenbush Road
Troy, NY 12180

*The Troy Police Department*
*and Ronald L. Epstein*
Office of Joshua A. Sabo                    JOSHUA A. SABO, ESQ.
287 North Greenbush Road
Troy, NY 12180

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff *pro se* Rafael Varela commenced this action[1] pursuant to 42

U.S.C. § 1983, alleging that defendants[2] violated his Fourth, Eighth, and

Fourteenth Amendment rights, along with various New York common law

claims.[3]  (Compl., Dkt. No. 1, Attach. 1 at 2-38.)  Before the court is the

---

[1] This action was initially commenced in New York State Supreme Court.  (Compl., Dkt. No. 1., Attach. 1 at 5-38.)  Defendants removed the action to this court.  (Dkt. No. 1 at 1-4.)

[2] Varela originally named twenty-one defendants.  (Compl.)  Following the dismissal of several defendants, (Dkt. Nos. 42, 45, 54), only Bailey Kelleher & Johnson, P.C. and John W. Bailey (collectively, "Bailey Defendants"), The City of Troy, The Troy Police Department, and Sergeant Ronald L. Epstein (collectively, "Troy Defendants"), and The County of Rensselaer remain.

[3] Varela's recognized New York common law claims include malicious prosecution, false arrest, false imprisonment, intentional and/or negligent infliction of emotional distress, negligent training and/or supervision, negligence, defamation, and malpractice.  (*See, e.g.*, Compl. ¶¶ 17-22, 24-26, 28-29.)  The court notes that Varela also filed an "Amendment to Complaint."  (Dkt. No. 1, Attach. 1 at 39-46.)  Any new allegations in the amended complaint, however, are asserted only against the Troy Defendants.  (*See generally id.*)  Because the Troy Defendants have not moved for summary judgment, the allegations in the "Amendment to

County and Bailey Defendants' motion for summary judgment,[4] (Dkt. No.

95), and Varela's motion to withdraw all defendants, (Dkt. No. 107).  For

the reasons that follow, defendants' motion is granted and Varela's motion

is denied.[5]

## II. <u>Background</u>[6]

Varela's complaint asserts nineteen causes of action against

defendants, most of which stem from several arrests effectuated over a

two-year period.  (Defs.' Statement of Material Facts (SMF), ¶¶ 10, 15, 41,

43, 48, 53, Dkt. No. 96.)  Most of the arrests were the result of domestic

disputes with Varela's ex-wife, Kyra Garrigue, whom he divorced in 2008,

and Varela allegedly violating orders of protection procured by Garrigue.

(*Id.* ¶¶ 6, 10, 12-13, 15-16, 41, 43, 48, 53.)  All of the arrests pertaining to

Varela's claims were effectuated by the Troy Police Department and the

---

Complaint" will not be considered here.

[4] Despite the expiration of the dispositive motion deadline, (Dkt. No. 84), the Troy Defendants have not filed a summary judgment motion.

[5] A little over a month after he filed his motion, Varela filed a letter motion requesting to withdraw his motion to withdraw all defendants.  (Dkt. No. 109.)

[6] Allegations involving Judge Stein, the Public Defender, or any party previously dismissed will not be addressed.  Additionally, pursuant to N.D.N.Y. L.R. 7.1(a)(3), the court deems admitted defendants' statement of material facts, which are properly supported and not specifically controverted.

North Greenbush Police Department; the County never effectuated any of the arrests at issue here.  (*Id.* ¶¶ 9, 49.)

## A.   <u>First Arrest</u>

As related to the claims in this case, Varela was first arrested on March 12, 2006 for harassment in the second degree by Sergeant Ronald L. Epstein of the Troy Police Department.  (*Id.* ¶¶ 10, 11.)  Following his arrest, Varela was transported to the Troy Police Department, where he remained in a holding cell overnight; he was arraigned the following morning.  (*Id.* ¶ 11.)  On March 13, 2006, the Troy City Court issued an order of protection, requiring that Varela stay away from Garrigue—at that time, his wife—and that he refrain from communicating with her.  (*Id.* ¶¶ 12, 13.)  The order of protection was to remain in effect for six months.  (*Id.* ¶ 12.)  In October of 2006, the harassment charge was dismissed on speedy trial grounds.  (*Id.* ¶ 14.)

## B.   <u>Second Arrest</u>

Varela's second arrest took place on April 7, 2006, and was made pursuant to a valid warrant issued by the Troy City Court.  (*Id.* ¶¶ 15, 16.) Varela was arrested by the Troy Police Department on charges of stalking in the fourth degree, a misdemeanor, and criminal contempt in the first

degree, a felony.  (*Id.* ¶ 15.)  Varela was arraigned on April 8, 2006 in Troy

City Court, at which time the court declined to set bail.  (*Id.* ¶ 17.)  Varela

was then remanded to Rensselaer County Correctional Facility. (*Id.*)

Varela claims that he was not advised of his right to contact the Spanish

Consulate either at the time of his arrest or at his arraignment.  (*Id.* ¶ 56;

Compl. ¶ 132; Dkt. No. 95, Attach. 8 at 91-92.)

On April 10, 2006, a preliminary hearing was scheduled in Troy City

Court, during which, Varela claims he felt compelled to waive his right to

the hearing.  (Defs.' SMF ¶¶ 19, 65; Compl. ¶¶ 128, 132-33; Dkt. No. 95,

Attach. 5 at 5-6.)  On April 18, 2006, Varela's bail amount was set at

$50,000, which he failed to post; he was then remanded to the correctional

facility.  (Defs.' SMF ¶¶ 22-23.)  As a result, Varela claims that he was

improperly imprisoned for seventy-five days. (*Id.* ¶ 24.)

In June of 2006, the Rensselaer County District Attorney's office filed

a motion seeking to reduce Varela's charge of felony criminal contempt in

the first degree, to criminal contempt in the second degree, a

misdemeanor; the motion was granted.  (*Id.* ¶ 25.)  Thereafter, on June 21,

2006, Varela was released from custody with the imposition of electronic

monitoring.[7]  (*Id.* ¶¶ 26, 27, 66; Dkt. No. 95, Attach. 8 at 61-62.)  About four or five days prior to his release in June 2006, Varela claims that a woman in Inmate Services, Kathleen Grady, shouted at him.  (Defs.' SMF ¶ 39.)  Varela also claims that, on July 14, 2006, a New York State Office of Court Administration officer— "4783"— threatened to kill him.  (*Id.* ¶ 59; Dkt. No. 95, Attach. 8 at 18-19.)

As a condition of his release on electronic monitoring, Varela was required, but often failed, to maintain contact with Rebecca Zido, his assigned probation supervisor with the Rensselaer County Probation Department.  (Defs.' SMF ¶¶ 28, 29, 30.)  Varela claims that Zido tried to convince him to "drop [his] job" and, in some of her evaluations, was "clearly bias (sic)," "took side[s] with [his] ex-wife, and twisted some of [his] words."  (*Id.* ¶ 31; Dkt. No. 95, Attach. 8 at 121-22.)

Varela proceeded to a jury trial with respect to the two pending charges of stalking and criminal contempt.  (Defs.' SMF ¶ 34.)   Ultimately, on November 28, 2006, Varela was convicted of stalking in the fourth degree, but the remaining criminal contempt charge was dismissed.  (*Id.* ¶

---

[7] Initially, Varela was denied release on electronic monitoring.  (Defs.' SMF ¶¶ 33, 64; Dkt. No. 95, Attach. 8 at 42.)

36.)  On December 19, 2006, Varela was sentenced to time served.  (*Id.* ¶ 37.)

## C.    <u>Third Arrest</u>

On August 2, 2007, Varela was arrested a third time by the Troy Police Department, pursuant to a valid warrant, on the charge of criminal contempt in the second degree, a misdemeanor.  (*Id.* ¶¶ 41, 42.)[8]

## D.    <u>Fourth Arrest</u>

Varela's fourth arrest took place on May 13, 2008; he was arrested by the Troy Police Department on two counts of criminal contempt in the second degree, which arose from incidents that occurred on April 16 and 17, 2008.  (*Id.* ¶ 43.)  The charges were dismissed without prejudice, and then re-filed; Varela was again arrested on August 15, 2008 on the same charges.  (*Id.* ¶ 45.)  On February 4, 2009, following a bench trial before Judge Robert M. Jacon of Rennsselaer County Court, Varela was found not guilty.  (*Id.* ¶¶ 46, 47; Dkt. No. 95, Attach. 13.)

## E.    <u>Fifth Arrest</u>

On October 31, 2008, Varela was arrested a fifth time on four counts

---

[8] The record is devoid of further facts surrounding this arrest, including the disposition of the charges.

7

of criminal contempt in the second degree, pursuant to a valid warrant issued by the Troy City Court.  (Defs.' SMF ¶¶ 48, 49.)  He was arrested by the North Greenbush Police Department, and then transferred to the custody of the Troy Police Department.  (*Id.* ¶ 49.)  Varela spent the night at the Troy Police Department, was transported to the Rensselaer County Correctional Facility the next morning, and released on bail the same afternoon.  (*Id.* ¶¶ 50, 51.)  On or about August 31, 2009, all four counts were dismissed as facially insufficient.  (*Id.* ¶ 52.)

## F.    <u>Sixth Arrest</u>

Finally, Varela was arrested a sixth time on December 23, 2008 by the Troy Police Department.  (*Id.* ¶ 53.)  He was arrested on the charge of endangering the welfare of a child, the basis of which was a Report of Suspected Child Abuse or Maltreatment completed by the New York State Office of Children and Family Services.  (*Id*. ¶¶ 53, 54.)  In June 2009, this charge was dismissed.  (*Id.* ¶ 55.)

## G.    <u>General Municipal Law § 50-e Hearing</u>

On November 30, 2009, Varela filed a notice of claim against the County and the Troy Defendants.  (Dkt. No. 95, Attach. 2.)  In it, he asserted claims pertaining to the events and conduct described above, and

at issue here.  (*See generally id.*)  The N.Y. General Municipal Law § 50-e

hearing took place on April 19, 2010, at which Varela claims that Bailey

screamed at him and bullied him.  (Defs.' SMF ¶ 60; Dkt. No. 95, Attach. 3;

Dkt. No. 95, Attach. 8 at 35-36.)  This conduct, Varela claims, made him

"[v]ery upset" and "almost afraid."  (Dkt. No. 95, Attach. 8 at 115.)  Varela

did not seek mental health treatment or counseling as a result.  (Defs.'

SMF ¶ 63; Dkt. No. 95, Attach. 8 at 117.)

## III.  Standard of Review

The standard of review pursuant to Fed. R. Civ. P. 56 is well

established and will not be repeated here.  For a full discussion of the

standard, the court refers the parties to its decision in *Wagner v. Swarts*,

827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v.*

*Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV.  Discussion

Although Varela lists nineteen separate causes of action in his

complaint, (Compl. ¶¶ 17-35), many of them are either redundant or not

recognized causes of action.[9]  Further, even after a thorough review of

---

[9] For example, Varela generically lists "Denial of right/s," (Compl. ¶ 32), as a separate
cause of action, which he concedes encompasses other, specifically identified causes of
action.  (Dkt. No. 95, Attach. 9 at 144.)  Additionally, Varela lists "[v]iolation of [his] rights under
42 U.S.C. § 1983" as a cause of action.  (Compl. ¶ 35.)  Section 1983, however, is not itself a

Varela's complaint, deposition transcript, and responses to interrogatories, it is difficult to ascertain the basis for many of Varela's claims, and against which party he asserts them.

Nevertheless, affording Varela the broadest possible reading and application of his claims, the court construes Varela's complaint to assert the following claims against the County arising under federal law: (1) violations of his Fourth Amendment rights, including claims of false arrest, false imprisonment, and malicious prosecution, pursuant to § 1983, (Compl. ¶¶ 17, 20, 21, 23, 35); (2) violations of his Fourteenth Amendment rights, including both a violation of equal protection and due process, and a claim that he was subjected to unreasonable conditions of confinement, pursuant to § 1983, (*id.* ¶¶ 19, 22, 27, 33, 34);[10] and (3) a violation of the Vienna Convention, (*id.* ¶¶ 31). The court also construes Varela's complaint to assert the following claims against the County arising under

_____

cause of action, but rather "the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." *Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995).

[10] Although Varela asserts that the County violated his Eighth Amendment rights, the Eighth Amendment does not apply to pre-trial detainees. *Bowman v. Campbell*, 850 F. Supp. 144, 147 (N.D.N.Y. 1995) (citing *Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir. 1973)). Since the Eighth Amendment does not apply prior to conviction and sentence, and Varela does not allege any post-conviction or post-sentencing claims, Varela's claims arise under the due process clause of the Fourteenth Amendment. *Lareau v. Manson*, 651 F.2d 96, 102 (2d Cir. 1981).

New York State common law: (1) false arrest, (*id.* ¶ 20); (2) false imprisonment, (*id.* ¶ 21); (3) malicious prosecution, (*id.* ¶ 17); (4) negligence, (*id.* ¶ 26); (5) negligent training/supervision, (*id.* ¶ 25); and (6) defamation, (*id.* ¶ 28).[11]

Varela asserts only a claim of intentional and negligent infliction of emotional distress against the Bailey Defendants.  (*Id.* ¶¶ 24, 95-106; Dkt. No. 95, Attach. 8 at 35-36.)  Accordingly, the court first addresses Varela's federal and state claims against the County, and then turns to Varela's claims against the Bailey Defendants.

A.    **Claims Against the County**

1.    *Federal Claims*

Varela contends that the County is liable for unconstitutional acts performed by its employees.  (*See generally* Compl.; Dkt. No. 103.) Specifically, Varela claims that:  (1) in violation of the Fourth Amendment,

---

[11] Varela also brings a malpractice claim against the Rennselaer County Public Defender.  (Compl. ¶ 29.)   He bases this claim on public defender Arthur Glass' representation of him during the April 10, 2006 preliminary hearing.  (Defs.' SMF ¶ 20; Dkt. No. 95, Attach. 4 ¶ 133.)  Although the Public Defender has already been dismissed, the court notes that this claim lacks merit under both federal and state law.  First,"[p]ublic defenders acting in their role as advocates are not amenable to suit under § 1983."  *Maye v. New York*, 517 F. App'x 56, 58 (2d Cir. 2013) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318-25 (1981)). Second, any New York State legal malpractice claims would be subject to New York's three year statute of limitations, *id.* (citing N.Y.C.P.L.R. § 214(6)), which had expired by the time Varela commenced his lawsuit in 2010, (Defs.' SMF ¶ 20; Dkt. No. 95, Attach. 4 ¶ 133).

he was falsely arrested and imprisoned numerous times between 2006 and 2008, (Compl. ¶¶ 1, 3, 20, 21); (2) also in violation of the Fourth Amendment, he was a victim of malicious prosecution, (*id.* ¶¶ 1, 3, 4, 20, 21); (3) in violation of the Fourteenth Amendment, his equal protection rights were infringed by (a) the County denying him access to the courts in 2006, (*id.* ¶ 138; Defs.' SMF ¶¶ 19, 65; Dkt. No. 95, Attach. 4 ¶¶ 128, 132-33; Dkt. No. 95, Attach. 5 at 5-6), (b) the County's initial denial to release him on electronic monitoring in 2006, (Compl. ¶ 161; Defs.' SMF ¶¶ 33, 64; Dkt. No. 95, Attach. 8 at 42), and (c) Zido discriminating against him during his release on electronic monitoring in 2006, (Compl. ¶¶ 140, 153-54);[12] and (4) also in violation of the Fourteenth Amendment, he was denied due process and subjected to unreasonable conditions of confinement when (a) Grady, from Inmate Services, shouted at him prior to his release in 2006, (*id.* ¶¶ 140, 143; Defs'. SMF ¶ 39), (b) he was ultimately released on electronic monitoring in June 2006, (Defs.' SMF ¶ 66), and (c) when he

_____

[12] Specifically, Varela claims that Zido discriminated against him on the basis of his national origin throughout his release on electronic monitoring in 2006. (Defs'. SMF ¶¶ 31, 32; Dkt. No. 95, Attach. 8 at 121.) Varela's basis for this discrimination claim is that Zido tried to convince him to "drop [his] job" and, in some of her evaluations, was "clearly bias (sic)," "took side[s] with [his] ex-wife, and twisted some of [his] words." (Defs.' SMF ¶ 31; Dkt. No. 95, Attach. 8 at 121-22.)

was threatened by "4783", a Court Administration officer, in July 2006,

(Compl. ¶¶ 59-63, 140; Defs.' SMF ¶ 59; Dkt. No. 95, Attach. 8 at 96-97).

Finally, Varela claims that he was not advised of his right to contact the

Spanish Consulate when he was arrested and arraigned in 2006.  (Compl.

¶ 132; Defs.' SMF ¶ 56, Dkt. No. 95, Attach. 4 ¶ 133; Dkt. No. 95, Attach. 8

at 91-92.)  All of Varela's claims against the County are either time-barred

or fail on the merits.

> i.    Timeliness

First, most of Varela's federal claims are time-barred.  Although 42

U.S.C. § 1983 itself contains no statute of limitations, the limitations period

applicable to § 1983 actions is determined by reference to state law.  *See*

*Fiesel v. Bd. of Educ. of City of N.Y.*, 675 F.2d 522, 524 (2d Cir. 1982).

The appropriate statute of limitations for § 1983 actions brought in New

York is three years from the date "the plaintiff knows or has reason to know

of the injury that is the basis of his action."  *Pauk v. Bd. of Trs. of the City*

*Univ. of N.Y.*, 654 F.2d 856, 859, 861 (2d Cir. 1981) (internal quotation

marks and citation omitted).[13]  Claims for false arrest and false

_____

[13] A very limited exception to this rule exists under the continuing violations doctrine, which "allows a plaintiff in certain circumstances to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period."  *Pollis v. New Sch. for Soc.*

imprisonment typically begin to run at the time the plaintiff is detained

pursuant to legal process—often, the arrest.  *See Wallace v. Kato*, 549

U.S. 384, 389 (2007); *Wharton v. Cnty. of Nassau*, No. 07-CV-2137, 2010

WL 3749077, at *3 (E.D.N.Y. Sept. 20, 2010).  Claims for malicious

prosecution begin to accrue when the underlying criminal action is

conclusively terminated.  *See Walters v. City Dep't of Corr.*, 517 F. App'x

41, 42 (2d Cir. 2013) (quoting *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir.

1995)).  Equal protection and due process claims begin to accrue, at the

latest, at the time of conviction.  *See Dellutri v. Vill. of Elmsford*, 895 F.

Supp. 2d 555, 563-64 (S.D.N.Y. 2012) (holding that the plaintiff was aware

of due process and equal protection claims at least by the time of his

conviction).

      Here, Varela's first three arrests occurred between March 2006 and

---

*Research*, 132 F.3d 115, 118 (2d Cir. 1997); *see also Bissinger v. City of N.Y.*, No. 06 Civ. 2325, 2007 WL 2826756, at *5 (S.D.N.Y. Sept. 24, 2007).  Here, in his opposition, Varela argues that the court should apply this doctrine.  (Dkt. No. 103 at 2.)  The court declines to do so.  "The continuing violation doctrine is generally viewed with disfavor in the Second Circuit and should be applied only on a showing of compelling circumstances."  *Bissinger*, 2007 WL 2826756, at *5; *see Nakis v. Potter*, No. 01 Civ. 10047, 2004 WL 2903718, at *10 n.2 (S.D.N.Y. Dec. 15, 2004).  Here, Varela has not alleged any compelling circumstances which would merit application of the continuing violations doctrine.  *See, e.g., Remigio v. Kelly*, No. 04 CIV 1877, 2005 WL 1950138, at *8 (S.D.N.Y. Aug. 12, 2005) ("Courts have found compelling circumstances where the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is a[n] express, openly espoused policy that is alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness." (internal quotation marks omitted)).

August 2007, (Defs.' SMF ¶¶ 10, 15, 41), and the latest known disposition of those charges was in November 2006, (*id.* ¶ 36).  Varela did not file his complaint until November 16, 2010.  (*See generally* Compl.)  Accordingly, Varela's Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution with respect to his first three arrests are time-barred, and all of Varela's Fourteenth Amendment claims are time-barred.

      ii.    Municipal Liability

Varela's remaining federal claims against the County include only Varela's claim under the Vienna Convention,[14] along with his Fourth Amendment claims with respect to his fourth, fifth, and sixth arrests. Defendants argue that these claims fail on the merits, (Dkt. No. 97 at 2-6), and the court agrees.

With respect to Varela's remaining Fourth Amendment claims, defendants argue that Varela has not shown a custom, policy, or practice by which the County discriminated against him.  (*Id.*)  A municipality may

---

[14] Without reaching the merits of this claim, it fails.  There is no evidence to suggest that this Circuit recognizes a private right of action under the Vienna Convention.  *See United States v. De La Pava*, 268 F.3d 157, 163 (2d Cir. 2001) (noting that all evidence suggests that there is no private right of action under the Vienna Convention, and that it "accord[s] substantial deference to the State Department's view" that there are no judicially enforceable rights under the Convention).  Varela has not pointed this court to any authority to the contrary.  Accordingly, Varela's claim arising under the Vienna Convention is dismissed.

be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To establish a municipal policy or custom, a plaintiff must allege:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006), *aff'd*, 232 F. App'x 26 (2d Cir. 2007) (citation omitted). However, a municipality and its supervisory officials may not be held liable under § 1983 based on the theory of *respondeat superior*. *See Monell*, 436 U.S. at 691.

In the instant case, there is no evidence—either direct or circumstantial—to support Varela's claims. *See Prowisor*, 426 F. Supp. 2d at 174. While Varela alleges that the County failed to properly select, train, supervise and/or discipline its employees, (Compl. ¶ 23), he bases this

16

assertion only on his belief that "so many different instances of bullying

[him] by so many different employees, so many different people, can only

occur when there is a culture that has been allowed to flourish, where it

has been permitted," (Dkt. No. 95, Attach. 9 at 141-42).  Further, in his

complaint and opposition, Varela has set forth similarly bare, conclusory

allegations of an unconstitutional custom, policy, or practice.  (*See* Compl.

¶¶ 9, 107-21, 140-42; Dkt. No. 103 at 3.)  Without more, these naked

allegations are insufficient to overcome a motion for summary judgment.

Accordingly, all of Varela's § 1983 claims against the County are

dismissed.

>    2.    *State Common Law Claims*

Varela also asserts New York common law claims of false arrest,

false imprisonment, malicious prosecution, negligence, negligent

training/supervision,[15] and defamation.  Defendants argue, and the court

---

[15] Without proceeding any further, the court notes that "[u]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution."  *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (relying on *Boose v. City of Rochester*, 71 A.D.2d 59, 62 (4th Dep't 1979) (holding that a plaintiff challenging the preparation of her case by police "may not recover under broad general principles of negligence . . . but must proceed by way of the traditional remedies of false arrest and . . . malicious prosecution")); *see also McSween v. Edwards*, 91 F.Supp.2d 513, 525 (E.D.N.Y. 2000) ("New York law prohibits recovery under a general theory of negligence when the traditional remedies of false arrest and imprisonment are available.") (internal quotation marks and citation omitted).  Notwithstanding the holding in *Bernard*, upon which this court now

agrees, that most of these claims must be dismissed because Varela failed to file a timely notice of claim.  (Dkt. No. 97 at 7-11.)  Any remaining claims fail on the merits.

           i.    Notice of Claim under General Municipal law § 50-e

Varela's claims for false arrest and false imprisonment with respect to all of his arrests, his claims for malicious prosecution with respect to all of his arrests, except for his October 31, 2008 arrest,[16] and his claim for defamation must be dismissed because Varela failed to file a timely notice of claim.

Under New York law, an aggrieved individual is (1) required to submit a notice of claim within ninety days after the state law claim arises and (2) bring suit within one year and ninety days "after the happening of the event upon which the claim is based."  N.Y. Gen. Mun. L. §§ 50–e(1)(a) and

_____

relies, some courts in this Circuit have held that "a cause of action sounding in negligence is legally sustainable against a city when the injured party demonstrates that he was injured due to the negligent training and supervision of a law enforcement officer."  *Hardin v. Meridien Foods*, No. 98 CIV. 2268, 2001 WL 1150344, at *9 (S.D.N.Y. Sept. 27, 2001); *see also Kurschus v. Painewebber, Inc.*, 16 F. Supp. 2d 386 (S.D.N.Y. 1998).  However, even if this court determined that a claim for negligent supervision is legally cognizable, any such claim would nonetheless fail against the County, as Varela has no cognizable claims against the County police officers themselves because they never effectuated any of the arrests.  Accordingly, all of Varela's claims sounding in negligence are dismissed.

    [16] As discussed below, Varela's notice of claim was timely with respect to his claim for malicious prosecution in relation to his arrest on October 31, 2008.  The charges related to that arrest were dismissed as facially insufficient on August 31, 2009.  (Defs'. SMF ¶ 52.)

50–i(1).  New York State law false arrest and false imprisonment claims

accrue immediately upon the plaintiff's release from confinement.

*Wharton*, 2010 WL 3749077, at *9 n.9; *Brownell v. LeClaire*, 96 A.D.3d

1336, 1336-37 (3d Dep't 2012).  A cause of action for malicious

prosecution accrues "when the criminal proceeding terminates favorably to

the plaintiff."  *Bumbury v. City of N.Y.*, 62 A.D.3d 621, 622 (1st Dep't

2009); *see also Brownell*, 96 A.D.3d at 1337.  Finally, a defamation cause

of action "generally accrues on the date of the first publication."  *Hoesten v.

Best*, 34 A.D.3d 143, 150 (1st Dep't 2006); *see Berry v. Vill. of Millbrook*,

No. 09-CV-4234, 2010 WL 3932289, at *6 (S.D.N.Y Sept. 29, 2010)*.*

Here, Varela filed his notice of claim on November 30, 2009, (Dkt.

No. 95, Attach. 2), which means that his claims must have begun to

accrue, at the latest, by August 31, 2009 in order for his notice of claim to

have been timely.  Varela's false arrest and false imprisonment claims for

all six arrests accrued outside of that time period, and are therefore

untimely.  (Defs.' SMF ¶¶ 10-11, 15-16, 41-43, 48-49, 53.)  Varela's

malicious prosecution claims for all of his arrests, except for his fifth arrest,

also accrued outside of that time period, and are therefore untimely.  (*Id.*

¶¶ 14, 36, 46-47, 55.)  Finally, Varela's defamation claim, which is based

on his allegation that he "cannot erase from public knowledge or from

public records that [he was] charged 12 times," (Dkt. No. 95, Attach. 9 at 4-

5), is also time-barred, as it began to accrue, at the latest, on December

23, 2008—the date of his last arrest.  (Defs.' SMF ¶ 53); *see Berry*, 2010

WL 332289, at *6.  Accordingly, all of Varela's state law claims, with the

exception of one malicious prosecution claim with respect to his sixth

arrest, are time-barred.

        ii.     Remaining Malicious Prosecution Claim

Though timely, as defendants concede, (Dkt. No. 97 at 10), Varela's

remaining claim of malicious prosecution with respect to the four counts of

criminal contempt in the second degree, which were dismissed as facially

insufficient on August 31, 2009, (Defs.' SMF ¶ 52), fails on the merits.  The

elements of a malicious prosecution claim under New York law are: "(1)

that the defendant commenced or continued a criminal proceeding against

[the plaintiff]; (2) that the proceeding was terminated in the plaintiff's favor;

(3) that there was no probable cause for the proceeding; and (4) that the

proceeding was instituted with malice."  *Droz v. McCadden*, 580 F.3d 106,

109 (2d Cir. 2009).  With respect to the second element, "[a] criminal

proceeding terminates favorably to the accused . . . when the final

20

disposition . . . involves the merits and indicates the accused's innocence."
*MacFawn v. Kresler*, 88 N.Y.2d 859, 860 (1996).

Here, on August 31, 2009, the four counts of criminal contempt in the
second degree, on which Varela was charged, were dismissed as facially
insufficient.  (Defs.' SMF ¶ 52.)  A dismissal on the grounds that a charge
is facially insufficient is not considered a final termination on the merits in
the plaintiff's favor.  *See Murphy*, 118 F.3d at 948-49; *MacFawn*, 88 N.Y.2d
at 869.  Accordingly, Varela's remaining claim for malicious prosecution
fails on the merits for lack of an essential element.

**B.    Claims Against the Bailey Defendants**

The Bailey Defendants argue that Varela's claims against them for
intentional and negligent infliction of emotional distress fail on the merits.
(Dkt. No. 97 at 22-24.)  The court agrees.

The law in New York concerning claims for intentional infliction of
emotional distress is well-settled.  "[I]n a cause of action for intentional
infliction of emotional distress, a plaintiff must plead and prove four
elements:  1) extreme and outrageous conduct; 2) the intentional or
reckless nature of such conduct; 3) a causal relationship between the
conduct and the resulting injury; and 4) severe emotional distress."

21

*Steptoe v. City of Syracuse*, 2011 WL 6012941, at *12 (N.D.N.Y. Nov. 1, 2011) (internal quotation marks and citations omitted). The requirements of this standard are exceedingly rigorous, and "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) (internal quotation marks and citations omitted). With regard to the fifth element—severe emotional distress—"a plaintiff must support his allegations with 'medical evidence, not just the mere recitation of speculative claims.'" *Calhoun v. Mastec, Inc.*, No. 03-CV-386, 2006 WL 2806452, at *10 (W.D.N.Y. Sept. 28, 2006) (quoting *Walentas v. Johnes*, 257 A.D.2d 352, 353 (1st Dep't 1999)); *see Biggs v. City of N.Y.*, No. 08 Civ. 8123, 2010 WL 4628360, at *9 (S.D.N.Y. Nov. 16, 2009).

Here, Varela's claims fail for two reasons. First, the record fails to disclose conduct that meets the strict standard for providing an intentional infliction of emotional distress claim. Varela's claims are based entirely on Bailey's behavior at the April 19, 2010 General Municipal Law § 50-e hearing, at which Varela claims Bailey bullied and yelled at him, causing

him to be upset and "almost afraid." (Defs.' SMF ¶ 60; Dkt. No. 95, Attach. 3; Dkt. No. 95, Attach. 8 at 35-36.) Bailey's behavior on this isolated incident simply falls short of the extreme and outrageous conduct required under the law. *See, e.g.*, *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 550 (2d Cir. 2009) ("[C]ourts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a deliberate and malicious campaign of harassment or intimidation."); *Leibowitz v. Bank Leumi Trust Co. of N.Y.*, 152 A.D.2d 169, 182 (2d Dep't 1989) (stating that the conduct at issue "must consist of more than mere insults, indignities, and annoyances" (internal quotation marks and citations omitted)). Second, Varela has failed to provide any medical evidence substantiating his claim of severe emotional distress. (Defs.' SMF ¶ 63; Dkt. No. 95, Attach. 8 at 117.) Accordingly, Varela's intentional infliction of emotional distress cause of action is dismissed.

Additionally, Varela's claim for negligent infliction of emotional distress also fails. Under New York law, a claim for negligent infliction of emotional distress exists "where the defendant breaches a duty owed to the plaintiff and, among other things, 'unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own

safety.'"  *Nelson v. Ulster Cnty.*, 789 F. Supp. 2d 345, 358 (N.D.N.Y. 2010).

Here, Varela's claims fail because he has not established that Bailey owed

him any duty whatsoever.  Accordingly, Varela's claims against the Bailey

Defendants are dismissed.[17]

## C.    **Varela's Motions**

On January 30, 2013—almost four months after the County and

Bailey Defendants filed their motion for summary judgment—Varela

requested that all defendants be withdrawn from this action.  (Dkt. No.

107.)  The County and Bailey Defendants filed a timely response to

Varela's motion, arguing that it should be denied, primarily because of the

advanced stage of the litigation.  (Dkt. No. 108 at 1-4.)  Although Varela

missed his deadline to file a reply, on March 7, 2013, he filed a letter

motion requesting to withdraw his motion to withdraw all defendants, and

asserting a host of additional grievances and claims against the Troy

---

[17] Although a moot point because the court grants defendants' motion in its entirety, the court notes that Varela also requested punitive damages.  (Compl. ¶ 36.)  Punitive damages, however, are not available with respect to claims asserted against a municipality under § 1983 or New York State law.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981); *Wilson v. City of N.Y.*, No. 12 Civ. 3021, 2013 WL 4710386, at *5 (S.D.N.Y. Aug. 30, 2013); *Johnson v. City of N.Y.*, No. 90 Civ. 7125, 1991 WL 41636, at *5 (S.D.N.Y. Mar. 22, 1991).

Defendants. (Dkt. No. 109.) Without considering Varela's new claims,[18] his second motion, (Dkt. No. 109), is granted only to the extent that it seeks to withdraw his initial motion, (Dkt. No. 107), and his initial motion to withdraw all defendants is therefore denied as moot, (Dkt. No. 107).

**D.    Troy Defendants**

The court is at a loss to understand why, in light of its view of the applicable law, the Troy Defendants failed to file a dispositive motion. Indeed, by failing to move, all of Varela's claims remain as against the Troy Defendants. Given our finding on the merits as it applies to the County, however, the court will afford the Troy Defendants fourteen days from the date of this Memorandum-Decision and Order to file a dispositive motion. If the Troy Defendants elect to file a motion, Varela shall have thirty days to respond.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the County and Bailey Defendants' motion for summary judgment (Dkt. No. 95) is **GRANTED**; and it is further

---

[18] Assuming that Varela's motion can be construed as an attempt to amend his complaint, he may no longer amend his complaint as of right, *see* Fed. R. Civ. P. 15(a)(1), and the court declines to permit him to amend his complaint at this late stage of the litigation.

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED** as against the County and Bailey Defendants; and it is further

**ORDERED** that Varela's motion to withdraw his previous motion (Dkt. No. 109) is **GRANTED**; and it is further

**ORDERED** that Varela's motion to withdraw all defendants (Dkt. No. 107) is **DENIED** as moot; and it is further

**ORDERED** that the Troy Defendants may, within fourteen (14) days after the date of this Memorandum-Decision and Order, file a dispositive motion; and it is further

**ORDERED** that if the Troy Defendants file a dispositive motion, Varela shall have thirty (30) days to respond; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 3, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

26