# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

**RAFAEL VARELA,**

|                        |                        |
|------------------------|------------------------|
| **Plaintiff,**         | **1:10-cv-1390**       |
|                        | **(GLS/RFT)**          |
| **v.**                 |                        |
| **THE CITY OF TROY et al.,** |                  |
| **Defendants.**        |                        |

_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Rafael Varela
Pro Se
450 Madison Street
Troy, NY 12180

**FOR THE DEFENDANTS:**
*The City of Troy*
City of Troy, Corporation Counsel        IAN H. SILVERMAN, ESQ.
Department of Law
1776 6th Avenue
Troy, NY 12180

Pattison, Sampson Law Firm              DONALD J. SHANLEY, ESQ.
22 First Street
P.O. Box 208
Troy, NY 12181-0208

Office of Joshua A. Sabo                JOSHUA A. SABO, ESQ.
287 North Greenbush Road
Troy, NY 12180

*The Troy Police Department*
*and Ronald L. Epstein*

Pattison, Sampson Law Firm　　　DONALD J. SHANLEY, ESQ.
22 First Street
P.O. Box 208
Troy, NY 12181-0208

Office of Joshua A. Sabo　　　JOSHUA A. SABO, ESQ.
287 North Greenbush Road
Troy, NY 12180

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff *pro se* Rafael Varela commenced this action pursuant to 42

U.S.C. § 1983, alleging that defendants City of Troy, Troy Police

Department, and Sgt. Ronald L. Epstein (collectively, "Troy Defendants")[1]

violated his Fourth, Eighth, and Fourteenth Amendment rights, along with

various New York common law claims.[2]  (Compl., Dkt. No. 1, Attach. 1 at 2-

38.)  Before the court is Troy Defendants' motion for summary judgment,

_____

[1] Varela originally named twenty-one defendants.  (Compl.; Dkt. No. 1, Attach. 1 at 5.)  Following the dismissal of all other defendants, (Dkt. Nos. 42, 45, 54, 110), only Troy Defendants remain.

[2] Varela's recognized New York common law claims include malicious prosecution, false arrest, false imprisonment, intentional and/or negligent infliction of emotional distress, negligent training and/or supervision, negligence, defamation, and malpractice.  (*See, e.g.*, Compl. ¶¶ 17-21, 23-26, 28-29.)

(Dkt. No. 113), and Varela's motions for reconsideration, to stay deportation proceedings, and to reopen discovery, (Dkt. No. 118).[3]  For the reasons that follow, Troy Defendants' motion is granted and Varela's motions are denied.

## II.  **Background**[4]

Varela's complaint asserts several causes of action against Troy Defendants, most of which stem from six arrests effectuated between 2006 and 2008.  (Troy Defs.' Statement of Material Facts (SMF) ¶¶ 33-43, Dkt. No. 113, Attach. 1.)  Most of the arrests were the result of domestic disputes involving Varela and his ex-wife, Kyra Garrigue, whom he divorced in 2008, and Varela allegedly violating orders of protection procured by Garrigue.  (*Id.* ¶¶ 34, 38, 42.)  All of the arrests pertaining to Varela's claims were effectuated by the Troy Police Department—some specifically by Epstein—and some were effectuated pursuant to warrants

_____

[3] Notably, Varela did not formally move for any of the relief he seeks. Rather, he simply requests additional relief in his response to Troy Defendants' summary judgment motion.  (*See generally* Dkt. No. 118.)

[4] Unless otherwise noted, the facts are not in dispute.

issued by Troy Police Court.[5]  (*Id.* ¶¶ 35-38, 40, 42-43.)

The County of Rensselaer moved for summary judgment on October 1, 2012, (Dkt. No. 95), but Troy Defendants did not.  In its January 3, 2014 Memorandum-Decision and Order, the court granted the County's motion for summary judgment and dismissed all of Varela's claims against it.  (Dkt. No. 110.)  As relevant here, the court held that Varela's federal claims relating to his first, second, and third arrests were time barred, and most of his state law claims were barred because he failed to file a timely notice of claim.[6]  (*Id.* at 13-15.)  The court also dismissed Varela's remaining federal claims against the County for failure to prove that the County maintained an unconstitutional custom, policy, or practice.  (*Id.* at 15-17); *see Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).  Despite the expiration of the dispositive motion deadline, (Dkt. No. 84), the court also

---

[5] For a full recitation of the facts, the parties are directed to the court's January 3, 2014 Memorandum-Decision and Order.  (Dkt. No. 110.)  Familiarity therewith is presumed.

[6] The court found that the malicious prosecution claim related to Varela's fifth arrest was timely, but, in any event, it failed on its merits because the charges against him were dismissed as facially insufficient, which is not considered a final termination on the merits in the plaintiff's favor.  (Dkt. No. 110 at 20-21 (citing *Murphy v. Lynn*, 118 F.3d 938, 948-49 (2d Cir. 1997); *MacFawn v. Kresler*, 88 N.Y.2d 859, 869 (1996).)

4

granted the Troy Defendants fourteen days from the date of the Memorandum-Decision and Order to file a dispositive motion, (Dkt. No. 110 at 25-26), which is now pending, (Dkt. No. 113).

### III. <u>Standard of Review</u>

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

### IV. <u>Discussion</u>

**A.** <u>**Varela's Motion for Reconsideration**</u>

Varela has filed a motion for reconsideration, requesting that the court reconsider its dismissal of his claims asserted against the County. (Dkt. No. 118 at 3-6.)  Varela's motion is denied.

As an initial matter, Varela's motion is untimely.  Under the Local Rules of Practice in this District, a motion for reconsideration must be filed no later than fourteen days after the entry of the challenged order.  *See* N.D.N.Y. L.R. 7.1(g).  Here, the court's Memorandum-Decision and Order

dismissing Varela's claims against the County was issued on January 3, 2014, (Dkt. No. 110), and Varela's motion for reconsideration was not filed until April 2, 2014, (Dkt. No. 118), well in excess of the fourteen-day time period.  Despite Varela's failure to comply with the Local Rules of Practice, the court has nevertheless considered his motion.

"A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice."  *Johnson v. Lynn-Caron*, No. 9:11-CV-0386, 2012 WL 3888175, at *4 (N.D.N.Y. Sept. 7, 2012) (citations omitted); *see also Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983).  Upon review, Varela's motion falls short of the standard required for reconsideration.  He does not point to a change in the controlling law, offer new evidence, or articulate a clear error of law.[7] Instead, he simply reasserts previous arguments and attempts to relitigate

_____

[7] Varela notes that this court erred in stating that his complaint was filed on November 16, 2010—the date of defendants' removal from state court to federal court—when it was in fact filed on August 31, 2010, (Dkt. No. 1, Attach. 1 at 5-38).  (Dkt. No. 118 at 3.)  The court appreciates and regrets this error, but it is of no moment, as it has no impact on the court's previous ruling.

issues already decided.  Accordingly, Varela's motion for reconsideration is denied.

## B.    <u>Troy Defendants' Motion for Summary Judgment</u>

As noted in its January 3, 2014 Memorandum-Decision and Order, the court construes Varela's complaint to assert the following claims against Troy Defendants arising under federal law, all of which relate to his six arrests: (1) violations of his Fourth Amendment rights, including claims of false arrest, false imprisonment, and malicious prosecution, pursuant to § 1983, (Compl. ¶¶ 17, 20, 21, 34, 35); (2) violations of his Fourteenth Amendment rights, including both a violation of equal protection and due process, and a claim that he was subjected to unreasonable conditions of confinement, pursuant to § 1983, (*id.* ¶¶ 19, 22, 27, 33, 34[8]); and (3) a violation of the Vienna Convention, (*id.* ¶¶ 31).  The court also construes Varela's complaint to assert the following claims against Troy Defendants

_____

[8] Although Varela asserts that the Troy Defendants violated his Eighth Amendment rights, the Eighth Amendment does not apply to pretrial detainees.  *See Bowman v. Campbell*, 850 F. Supp. 144, 147 (N.D.N.Y. 1994) (citing *Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir. 1973)).  Since the Eighth Amendment does not apply prior to conviction and sentence, and Varela does not allege any post-conviction or post-sentencing claims, Varela's claims arise under the due process clause of the Fourteenth Amendment.  *See Lareau v. Manson*, 651 F.2d 96, 102 (2d Cir. 1981).

arising under New York State common law, again, all of which relate to his six arrests: (1) false arrest, (*id.* ¶ 20); (2) false imprisonment, (*id.* ¶ 21); (3) malicious prosecution, (*id.* ¶ 17); (4) negligence, (*id.* ¶ 26); (5) negligent training/supervision, (*id.* ¶ 25); and (6) defamation, (*id.* ¶ 28).

    1.    <u>The Law of the Case Doctrine</u>

As an initial matter, Troy Defendants contend that the court has already ruled on the issues of the timeliness and merits of Varela's federal and state law claims, and those rulings are now the law of the case. (Dkt. No. 113, Attach. 18 at 6-8.) The court agrees.

The law of the case doctrine states that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (internal quotation marks and citations omitted). Indeed, the court should "adhere to its own prior rulings in a given case absent cogent or compelling reasons to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (internal quotation marks and citations omitted). "The underlying considerations for this doctrine are obvious: to

8

maintain fairness to the parties; to maintain consistency throughout the litigation; to avoid reconsideration of matters once decided during the course of the litigation; and to promote judicial economy and societal interest in finality." *Stewart Park & Reservation Coal., Inc. (SPARC) v. Slater*, 358 F. Supp. 2d 83, 104 (N.D.N.Y. 2005) (citing *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999)).

Here, there exist no "cogent or compelling reasons to deviate" from the court's January 3, 2014 rulings. Accordingly, for the reasons stated in the court's January 3, 2014 Memorandum-Decision and Order, Varela's Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution with respect to his first three arrests are time-barred, all of Varela's Fourteenth Amendment claims are time-barred, his claim under the Vienna Convention is not cognizable, and all of his state law claims, except for his malicious prosecution claims related to his fifth arrest, are barred because he failed to file a timely notice of claim. (Dkt. No. 110 at 13-15, 17-20.) Also for the reasons stated in the court's January 3, 2014 Memorandum-Decision and Order, Varela's remaining, timely New York

state common law claims for malicious prosecution fail on the merits.[9]

Varela's only remaining claims against Troy Defendants include his Fourth Amendment false arrest and malicious prosecution claims related to his fourth, fifth, and sixth arrests.[10]  These claims are discussed below.

---

[9] On or about August 31, 2009, all of the charges related to Varela's fifth arrest were dismissed as facially insufficient.  (Troy Defs.' SMF ¶ 42.)  Because the charges were dismissed as facially insufficient, there was no final termination on the merits in Varela's favor.  *See Murphy*, 118 F.3d at 948-49; *MacFawn*, 88 N.Y.2d at 869.

[10] The court notes that Varela also filed an "Amendement to Complaint."  (Dkt. No. 1, Attach. 1 at 39-46.)  The allegations in the "Amendement to Complaint" are wholly unrelated to the claims in Varela's complaint; instead, they are concerned with Varela's various disputes with the Department of Buildings and Codes of the City of Troy and the Troy Police Department, and arise out of alleged code violations committed by Varela.  (*See generally id.*)  While Varela claims that two "Troy Cops" beat loudly on his door and peered into his house, he has neither identified these officers, nor attempted to name them as defendants in this action.  (*Id.* at 41.)  Moreover, attached to his "Amendement to Complaint" is an "Answer and Counter Sue," which Varela filed in the Troy City Court.  (*Id.* at 47-50.)  In this document, Varela makes several allegations against David Sheeran, a City of Troy Code Enforcement officer, arising out of Varela's alleged code violations.  (*Id.*)  Neither Sheeran, nor any other employee of the City of Troy Bureau of Buildings and Code Enforcement, however, have been named as a defendant in this action.  Furthermore, Troy Defendants maintain, and Varela does not dispute, that Varela never filed a Notice of Claim asserting any of the claims described in his "Amendement to Complaint" or "Answer and Counter Sue."  (Troy Defs.' SMF ¶ 28.)  Accordingly, given that, with respect to these additional claims, Varela has not named a proper defendant or filed a Notice of Claim, as is required by New York General Municipal Law § 50-e, any additional claims that Varela asserts in his "Amendement to Complaint"

## 2.    Remaining Claims Against Epstein

With regard to Varela's claims against Epstein, Troy Defendants assert that the court lacks personal jurisdiction because Epstein was never served with a copy of the summons and complaint.  (Dkt. No. 113, Attach. 18 at 8.)  Alternatively, Troy Defendants contend that Epstein had probable cause for each of the arrests and prosecutions, and Varela's claims must be dismissed on the merits.  (*Id.* at 10-14.)  Varela's only responses are that it is too late for Troy Defendants to contest personal jurisdiction, and, without providing any evidence, Epstein never had probable cause.  (Dkt. No. 118 ¶¶ 5, 31.)  The court agrees with defendants.

### i.    Personal Jurisdiction

First, to resolve questions of personal jurisdiction, the court must conduct a two-part inquiry.  Initially, the court "determine[s] whether there is jurisdiction over the defendant under the relevant forum state's laws."  *Xiu Feng Li v. Hock*, 371 F. App'x 171, 174 (2d Cir. 2010) (internal quotation marks and citations omitted).  Next, assuming there is jurisdiction, the court asks if the exercise of jurisdiction comports with the requirements of federal due process.  *See id.*  The burden of proving personal jurisdiction rests with

_____

 are dismissed.

the plaintiff.  *See, e.g., Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996); *J.R. ex rel. Reid v. Advanced Bionics, LLC*, No. 5:11-cv-843, 2012 WL 5472304, at *1 (N.D.N.Y. Nov. 9, 2012).

Personal jurisdiction may be raised on a summary judgment motion, in which case "the plaintiff must establish that there is no genuine issue of material fact as to the court's jurisdiction."  *Malmsteen v. Berdon, LLP*, No. 1:05-cv-00958, 2009 WL 1578615, at *2 (S.D.N.Y. June 8, 2009); *see Ball v. Metallurgie Hoboken-Overpelt*, *S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). In other words, "the court proceeds, as with any summary judgment motion, to determine if undisputed facts exist that warrant the relief sought." *Ball*, 902 F.2d at 197.

Under New York law, service of the summons and complaint must be made within 120 days of commencing an action.  *See* N.Y. C.P.L.R. § 306-b.  This rule is identical to the federal analog.  *See* Fed. R. Civ. P. 4(m). Here, as Troy Defendants assert, there is no record evidence, either submitted by Varela in response to this motion or available on the docket, that Epstein was served.  (Dkt. No. 113, Attach. 18 at 8.)  Additionally, Epstein has submitted an affidavit stating that he was never personally served with a copy of the summons and complaint.  (Dkt. No. 113, Attach.

12

16 ¶¶ 6-8.)  Furthermore, Troy Defendants note that Epstein preserved this affirmative defense in his responsive pleading.  (Dkt. No. 113, Attach. 5 at 6; Dkt. No. 113, Attach. 18 at 8); *see Eiden v. McCarthy*, 531 F. Supp. 2d 333, 344-45 (D. Conn. 2008) (noting that "courts in [the Second] Circuit, without requiring a prior motion to dismiss, have granted summary judgment for improper service when [the] defendants raised 'personal jurisdiction' as an affirmative defense in their Answer" (quoting *Lange v. Town of Monroe*, 213 F. Supp. 2d 411, 421 (S.D.N.Y. 2002))).

Varela, on the other hand, does not even contend that Epstein was served, and he has otherwise come forward with no evidence demonstrating that there is a genuine issue of material fact with respect to the court's jurisdiction.  (Dkt. No. 118 ¶ 43.)  Accordingly, the court lacks personal jurisdiction over Epstein, and Varela's claims against him must be dismissed.

ii.    Probable Cause

Even if the court were to determine that Troy Defendants waived personal jurisdiction, Varela's false arrest and malicious prosecution claims against Epstein fail on the merits.

To establish a false arrest claim under § 1983, a plaintiff must show

13

that: "(1) [defendants] intended to confine the plaintiff[;] (2) the plaintiff was conscious of the confinement[;] (3) the plaintiff did not consent to the confinement[;] and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994); *see Donovan v. Briggs*, 250 F. Supp. 2d 242, 249 (W.D.N.Y. 2003). Similarly, "[t]o prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). Here, the dispute centers on whether Varela's arrests were supported by probable cause. (Dkt. No. 118 ¶ 31; Dkt. No. 113, Attach. 18 at 10-14.)

"Probable cause [to arrest] exists when an officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Savino v. City of N.Y*, 331 F.3d 63, 76 (2d Cir. 2003) (internal quotation marks and citation omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."

*Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted).

Importantly though, an "officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Id.* at 153 (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996)). Instead, an arrest is lawful "as long as the circumstances, viewed objectively, justify that action." *Id.* (internal quotation marks and citation omitted).

Further, although "[t]he probable cause determination relevant to a malicious prosecution claim differs from that relevant to a false arrest claim, . . . a lack of probable cause to believe the plaintiff committed the crime in question necessarily entails a lack of probable cause to commence a proceeding against him or her." *Mejia v. City of N.Y.*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000). Moreover, while, for a malicious prosecution claim, probable cause is measured at the time of the arraignment, rather than the arrest, *see id.*, this distinction is of no moment here; the record does not show, and the parties do not argue, that any additional evidence was discovered between Varela's arrests and the commencement of judicial proceedings against him.

Here, with respect to the fourth arrest, Epstein has come forth with evidence demonstrating that the charges were based upon supporting

depositions of Garrigue and her attorney, stating that on April 16 and 17, 2008, Varela violated an order of protection.  (Dkt. No. 113, Attach. 16 ¶¶ 17, 21.)  Similarly, with respect to the fifth arrest, Garrigue again prepared and executed a deposition and filed a complaint against Varela, alleging that Varela, on August 29 and September 2, 2008, again violated an order of protection; the arrests were ultimately made pursuant to a valid warrant issued by the Troy Police Court.  (*Id.* ¶¶ 22-23.)  Finally, with respect to the sixth arrest, Epstein received a report from the New York State Office of Children and Family Services, stating that Varela was guilty of endangering the welfare of a child under the age of seventeen.  (*Id.* ¶¶ 25.)  Based on this report, Epstein prepared an accusatory instrument, issued an appearance ticket to Varela, interviewed Varela—during which interview Varela made incriminating statements—and then arrested and processed Varela.  (*Id.* ¶ 26.)

Given these facts, there was probable cause for the arrests and prosecutions.  *See Southerland v. Garcia*, 483 F. App'x 606, 608 (2d Cir. 2012) (noting that summary judgment was proper on false arrest and imprisonment claims because the plaintiff was arrested pursuant to a facially valid warrant); *Pacicca v. Stead*, 456 F. App'x 9, 11-12 (2d Cir.

2011) (noting there was probable cause to arrest and prosecute the plaintiff for violating an order of protection issued because the plaintiff had previously engaged in similar conduct); *Morales v. City of N.Y.*, 209 F. App'x 75, 76 (2d Cir. 2006) (noting that arguable probable cause existed where the arresting officer was presented with a filed complaint alleging a violation of an order of protection, a complainant attesting in person to the violations and seeking to press charges, and a copy of the order of protection).  Accordingly, the remaining claims against Epstein are dismissed.

### 3. *Remaining Claims Against the Troy Police Department*

Troy Defendants contend that Varela's claims against the Troy Police Department must be dismissed.  (Dkt. No. 113, Attach. 18 at 16.)  The court agrees.

"Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments . . . are not amenable to suit." *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999); *see Lynch v. Claus*, No. 1:13-cv-830, 2013 WL 4455625, at *4 (N.D.N.Y.

Aug. 16, 2013).  Here, Troy Defendants contend, and the court agrees, that the Troy Police Department "is an administrative arm of the City of Troy, which is a municipality," and as such, it "cannot sue or be sued because it does not exist separate and apart from the City and does not have its own legal identity."  (Dkt. No. 113, Attach. 18 at 16); *see Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008).  Accordingly, any and all claims against the Troy Police Department are dismissed.

    *4.    Remaining Claims Against the City of Troy*

Varela's remaining federal claims against the City of Troy include only his Fourth Amendment claims with respect to his fourth, fifth, and sixth arrests.  Troy Defendants argue that these claims fail on the merits, (Dkt. No. 113, Attach. 18 at 16-18), and the court agrees.

With respect to Varela's remaining Fourth Amendment claims, Troy Defendants argue that Varela has not shown a custom, policy, or practice by which the County discriminated against him.  (*Id.*)  A municipality may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell*, 436 U.S. at 694.  To establish a municipal policy or custom, a plaintiff must

18

allege:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006), *aff'd*, 232 F. App'x 26 (2d Cir. 2007) (citation omitted).  However, a municipality and its supervisory officials may not be held liable under § 1983 based on the theory of *respondeat superior*.  *See Monell*, 436 U.S. at 691.

In the instant case, there is no evidence—either direct or circumstantial—to support Varela's claims.  *See Prowisor*, 426 F. Supp. 2d at 174.  While Varela alleges that the City of Troy failed to properly select, train, supervise and/or discipline its employees, (Compl. ¶ 23), he has set forth only bare, conclusory allegations of an unconstitutional custom, policy, or practice, (Compl. ¶¶ 9, 107-21, 140-42), and his opposition to Troy Defendants' motion for summary judgment is devoid of any argument supporting, or evidence suggesting, an unconstitutional custom, policy, or

practice, (*see generally* Dkt. No. 118). Without more, Varela's naked allegations are insufficient to overcome a motion for summary judgment. Accordingly, all of Varela's § 1983 claims against the City of Troy are dismissed.

**C.** **Varela's Remaining Motions**

Given the dismissal of the remaining claims and defendants from this action, Varela's motions to stay deportation proceedings and to reopen discovery, (Dkt. No. 118), are denied as moot.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the Troy Defendants' motion for summary judgment (Dkt. No. 113) is **GRANTED**; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED** in its entirety; and it is further

**ORDERED** that Varela's motions for reconsideration, to reopen discovery, and to stay deportation proceedings (Dkt. No. 118) are **DENIED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

May 22, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court